CLST Enterprises I don't see... Yes. ...if you can cut out. Get situated. Yes, Your Honor. Thank you. May I? Please begin. Thank you, Your Honors. May it please the Court. My name is Luis Trujillo. I represent Mr. Carl Thompson. Mr. Carl Thompson is a 50% member of the debtor LLC. This appeal presents three core errors. One, the LLC never validly authorized the bankruptcy filing. Two, a member with known... Apologies. A member with incapacity was denied due process and guardian protection. And thirdly, Your Honors, the sale of substantially all of the debtor's assets failed the Second Circuit standard under the Committee of Equity, Securities, and Holders, the Lionel 722 FD 1063. Can I ask you to first address why the appeal is not moved? Because I understand that your client filed a notice of appeal from the April 10th order denying his application for emergency relief. And so the only issue before us, it would seem to me, is whether the district court erred by declining to stay those two orders, the sale order and the eviction order. Your client has now left the premises, so I think you're conceding that the eviction part of this is now moved. But haven't all the provisions of the sale order also already taken effect? No, Your Honor. I'm sorry. Just to answer the question, has the property actually been sold or transferred? Thank you. No, that is not the case. There is a liquidation plan in the bankruptcy docket. There was an amended liquidation plan, but as of yet there has not been a formal transfer to a bona fide purchaser. But the order addressed the auction terms and the procedures for the sale. So am I right, just making sure I understand the record, an auction occurred under the terms and procedures that were prescribed in that order and a sale has been confirmed? A sale has been confirmed. However, there is no ñ it has not been transferred to a third party, if you will. There's no buyer, so to speak. And for that reason, we believe that that issue is not moved, albeit, yes, our client is unfortunately off the property. As I move forward, Your Honor, I would just like to state that the bankruptcy filing was unauthorized. The powers under the agreement, the LLC agreement, did not authorize the dissolution unless all members were in agreement, so all members would have voted in favor of doing so. However, in that regard, it brings us to a second issue, and that is the issue of the 50 percent members in capacity. To give Your Honors a little bit of background, the members are husband and wife. They've owned this property for decades, and they created this LLC instead of simply just having it structured in a deed for their own purposes. That capacity is one in which they operated and tried to work with their bank for many years. As things became more complicated, the debtor, one of the members, if you will, filed bankruptcy. However, that was in direct violation of the operating agreement, and just to place it on the record, the Section 3.5 of the LLC operating agreement unambiguously states that the manager's authority is limited regarding the bankruptcy filings. The provisions explicitly prohibit the manager from filing consent, the filing of bankruptcy, insolvency, or reorganization without additional consent, and the actual strict interpretation is that all members must consent, and 50 percent is not all members. The next issue before is the incapacity of that particular member who did not concede, did not agree to go forward, and that's Mr. Carl Thompson's wife, Margaret. Margaret has particular mental hygiene incapacities, and the record is riddled with the need of providing a guardian. Our position is that a guardian should have been provided under the Federal Rules Bankruptcy Practice Act 1004.1B2, excuse me, and that is to allow for the proper due process of this particular individual. When the Weiss firm took the case, it had been two years into the case already, and we saw this and took immediate action to try and place a guardian. However, by then, unfortunately, the train had left the building, and the case was very far along. Insofar as that, the third part of our argument is under Lionel itself, and it is our position that, as the Court knows, the test on Lionel requires a unified decision-making process that balances the equity. Could you address the provision of the agreement that you say limits the manager's authority to file for bankruptcy? The bankruptcy court, in the proceedings below, there was a focus on the preparatory language to that that you didn't read when you read us the provision. But the argument is that the provision is that if a loan agreement so limits the authority of the manager, while there are obligations under the loan, then the manager may have his authority limited, but not otherwise. So what's wrong with that interpretation? Yes, Your Honor. I believe that falls into one of the arguments my adversaries have made, and that's that this trustee confuses an invalid ipso facto clause benefiting the creditor with internal limitations on the manager's ability. The case the trustee relies on involves a creditor requiring a provision to prevent bankruptcy relief. That is not the case here. The clause that we are dealing with, Section 3.5, is not a blanket waiver of the debtor's ability to file, specifically limits the managing member's unilateral authority. In short, Your Honor, the right between the two members was not extinguished. There was still a duty in that capacity. A strict reading of the article of dissolution, I believe, would reveal that. Moving forward, Your Honors, in regards to the Lionel standards, this is something that I think is at heart on anyone who's done foreclosure for a long time. We have a debtor who has a commercial property on the first floor. This is not a home in Nassau, a home in Westchester. This is a commercial potential property. In that regard, there was effort by the debtor to attempt and get a tenant in that property. A little bit of back and forth between the banks did not allow that. And the reason I mention it is because I want the court to note that the bank has been on board this train from the beginning, from before the beginning. They waited not more than, I don't know, I think I calculated 48 days from the time our client filed to put their notice of appearance. And, obviously, they went in aggressively and, in our opinion, caused a weight, an imbalance to be in their favor. This particular creditor is eager to do what it's eager to do. Was not interested in leasing the property when it was available as a remedy, when it became part of a bankruptcy process. It still did not go forward. And in conjunction with the trustee, the trustee decided that the best remedy is to sell. But that is not the case. This is a property that, under that particular lease, would have yielded $33,000 per month. And that was in 2022. I can assure you that would go for a lot more right now. And that brings us to the finality of it all, at least our position, that the equities were not balanced. That there were particular actions not taken. We seek to have the matter remanded back to bankruptcy court. There is still an opportunity for Your Honors to act. And I thank you for your time. I realize my time is up. That's exactly correct, Your Honor. Yes, sir. It's been a privilege and an honor.